John K.D. SCRUGGS, Appellant,

v.

STATE of Minnesota, Respondent.

No. C7–91–1285.

Supreme Court of Minnesota.

May 1, 1992.

---

John M. Stuart, State Public Defender, Leslie Rosenberg, Asst. State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, Atty. Gen., St. Paul, Michael O. Freeman, Hennepin County Atty., Lisa A. Berg, Asst. County Atty., Minneapolis, for respondent.

YETKA, Justice.

John K.D. Scruggs appeals from an order of the Hennepin County District Court denying him postconviction relief on his conviction for first-degree murder. We affirm the district court.

This court has already affirmed appellant's conviction on his direct appeal. The federal court has denied his petition for habeas corpus relief. On his current motion for postconviction relief, he now

claims: (1) the postconviction court erred by failing to make findings of fact and conclusions of law as required by Minn. Stat. § 590.04, subd. 1 (1990), and (2) he was denied his right to effective assistance of counsel because trial counsel failed to introduce exculpatory evidence, call certain witnesses, and appeal timely the denial of a pretrial motion to dismiss the grand jury indictment.

On November 26, 1985, a Hennepin County grand jury indicted Scruggs on one count of first-degree murder (Minn.Stat. §§ 609.05, .185(1)) and one count of conspiracy to commit first-degree murder (Minn. Stat. § 609.175, subd. 2(2)). The events leading to Scruggs' indictment and conviction are fully discussed in this court's opinion affirming Scruggs' conviction. *See State v. Scruggs*, 421 N.W.2d 707 (Minn. 1988) (*Scruggs I*). The following summary of facts is based on the statement of facts in *Scruggs I.*

On October 13, 1985, the body of 16-year-old Christine Kreitz was found in a Minneapolis park. The autopsy revealed that Kreitz died from two gunshot wounds to the head. Although Kreitz's pants were pulled down to her knees and her underwear had been torn off in an apparent attempt to disguise the motive for her death, the autopsy revealed no evidence of sexual assault.

Kreitz had been a member of The Black Gangster Disciple Nation (Disciples). Several Disciples members testified that Scruggs led the St. Paul and Minneapolis factions in September 1985. On September 22, 1985, Kreitz was arrested as she was fleeing the scene of a gun store burglary. The police unsuccessfully chased a suspect matching Scruggs' description. Scruggs denied being present while the burglary was planned or carried out, but several witnesses testified that Scruggs participated and that he was the fleeing suspect. Witnesses also testified that, when Scruggs returned from the burglary, he stated Kreitz had been caught and might be "snitching" to the police. Under the Disciples' "code of silence," the penalty for providing information to the police was to be killed by two shots to the head.

On the evening of October 12, 1985, several Disciples (including Kreitz) gathered at Mary Braxton's house. Scruggs called by phone and spoke with Braxton and Donald Hunter. He told them that there were two "snitches" in the gang and something had to be done, but that it was "under control." Scruggs later arrived at the Braxton home and told Braxton, Sandra White, and Grailon Williams that they should walk Kreitz home, find a secluded area and shoot her twice in the head while making the murder "look like a rape." As Williams, White and Braxton were walking Kreitz home, they stopped at Martin Luther King Park, where Williams shot Kreitz twice in the head. They returned to Braxton's house, and Scruggs told them to go back to the park and "make it look like a rape," which they did.

On November 6, the police arrested Sandra White, and on November 7, the police arrested Mary Braxton. In their statements to the police, White and Braxton admitted involvement in Kreitz's murder and implicated Scruggs. The grand jury returned an indictment against Scruggs, White, Braxton and Williams, charging them with murder in the first degree and conspiracy to commit murder in the first degree. Braxton and White entered into plea agreements with the state in the spring of 1986. The agreements required Braxton and White to plead guilty to the conspiracy charge and cooperate with the prosecution by testifying truthfully at Scruggs' and Williams' trials.

At trial, Scruggs denied being the leader of the Disciples and planning or participating in the burglary. He admitted having been at Braxton's on the night of Kreitz's killing, but denied any involvement. The jury convicted Scruggs on the first-degree murder count and dismissed the conspiracy count. Scruggs was sentenced to life in prison.

Scruggs raised five issues in his direct appeal: (1) whether the evidence was sufficient, (2) whether the plea agreements violated his right to due process and a fair trial by encouraging false testimony, (3)

whether the trial court erred by not holding a *Spreigl* hearing regarding evidence of Scruggs' involvement in the gun store burglary, (4) whether the prosecutor's comments during closing argument constituted misconduct, and (5) whether the admissible evidence before the grand jury was sufficient to support the indictment. This court did not find in favor of Scruggs on any of these issues and thus affirmed his conviction. *See Scruggs I.*

On July 5, 1990, Scruggs filed a pro se postconviction petition. The petition alleges the following errors: (1) the indictment improperly was based on unsworn statements, (2) prosecutorial misconduct, (3) perjured testimony by one of the state's witnesses, and (4) ineffective assistance of counsel.[1] On February 20, 1991, the state public defender filed a supplemental petition clarifying the grounds for the ineffective assistance claim. The petition requests vacation and dismissal of the judgment of conviction or, alternatively, vacation and a new trial.

On April 24 and 30, 1991, the trial court judge presided over the postconviction relief hearing. The court heard testimony by Scruggs and the attorney who represented Scruggs at trial and on direct appeal. The court denied the petition in a summary order and did not make any findings of fact or conclusions of law.

The issues presented on appeal are:

I. Does the postconviction court's denial of relief without making findings of fact or conclusions of law require reversal or remand?

II. Did appellant receive ineffective assistance of counsel at his trial and on direct appeal?

Scruggs argues that the postconviction court's summary denial of relief fails to comply with the statutory guidelines for postconviction proceedings. Minn.Stat. § 590.04, subd. 1 (1990) provides:

> Unless the petition and the files and records of the proceeding *conclusively* show that the petitioner is entitled to no relief, the court shall promptly set an early hearing on the petition and response thereto, and promptly determine the issues, *make findings of fact and conclusions of law* with respect thereto, and either deny the petition or enter an order granting appropriate relief.

(Emphasis added.) This court has not spoken on the consequences of a postconviction court's failure to make findings and conclusions. The court of appeals did address the issue in *State v. O'Leary*, 359 N.W.2d 703, 704 (Minn.App.1984). In *O'Leary*, the postconviction court summarily denied the appellant's request for resentencing, and the court of appeals held that the postconviction court must enter specific findings of fact and conclusions of law because the petition did not fit any of the limited exceptions set out in Minn.Stat. § 590.04, subd. 3.[2] 359 N.W.2d at 704.

The *O'Leary* court did not discuss whether the failure to make findings and conclusions may be excused in some circumstances. The postconviction court makes findings and conclusions to facilitate appellate review. *See Davis v. State*, 775 P.2d 1243, 1247 (Idaho App.1989), *petition for review dismissed* (Idaho, July 29, 1989). However, it is not clear whether this purpose is so compelling that it requires remand or reversal. In an instance where the reviewing court cannot ascertain whether the postconviction court actually considered one of the petitioner's claims, remand is appropriate. *State v. Morris,*

---

1. Appellant's brief does not address the first three claims, so these claims are deemed waived. *Balder v. Haley*, 399 N.W.2d 77, 80 (Minn.1987). In any event, these claims lack merit: the first two claims were decided adversely to appellant in *Scruggs I,* and the third claim is based on the misconception that Officer Lussier committed perjury when she did not refer in her testimony to a police report the court had ruled inadmissible.

2. Minn.Stat. § 590.04, subd. 3 (1990) provides in pertinent part: "The court may summarily deny a second or successive petition for similar relief on behalf of the same petitioner and may summarily deny a petition when the issues raised in it have previously been decided by the court of appeals or the supreme court in the same case."

609 P.2d 652, 656 (Idaho 1980). However, if "the record is clear and yields an obvious answer to the relevant questions raised on appeal," the reviewing court may disregard the absence of findings of fact or conclusions of law. *Davis*, 775 P.2d at 1247. In *Davis*, the Idaho Court of Appeals acknowledged that the postconviction court's written decision did not thoroughly address each of the petitioner's claims; nevertheless, the court independently examined the record as to each claim and concluded that denial of relief was proper. *Id.* at 1247–48.

■ The *Davis* approach promotes judicial efficiency because it avoids remand in cases where it is clear that the reviewing court will ultimately affirm. Although it may be inefficient for an appellate court to review the record without the guidance of specific findings and conclusions, we make an independent review of the record even when the postconviction court has made specific findings. *See Barness v. State*, 290 Minn. 509, 510, 187 N.W.2d 111, 112 (1971) (court reviews postconviction hearing to determine sufficiency of the evidence). On the other hand, the postconviction court should not be encouraged to shirk its fact-finding role.

■ We do not deem the summary order to be error in this case because the postconviction judge also presided over trial and the record clearly and conclusively supports the denial of relief. However, we do believe it is important to emphasize that, if a trial court deems a hearing on postconviction relief necessary, it should follow that hearing with findings of fact and conclusions of law on each of the points raised on appeal. In many cases, this does not require extensive findings, but the court's records should reflect its consideration of and findings regarding each of the issues raised.

■ Appellant also raises the issue of ineffective assistance of counsel. The state argues that Scruggs' failure to raise the issue earlier bars the claims. However, a direct appeal is not the most appropriate way to raise an ineffective-assistance claim. *State v. Cermak*, 350 N.W.2d 328, 332 n. 5 (Minn.1984). This court previously

has considered ineffective-assistance claims in postconviction proceedings even though petitioner did not raise the claims on direct appeal. *E.g., Gustafson v. State*, 477 N.W.2d 709 (Minn.1991); *Marhoun v. State*, 451 N.W.2d 323, 328 (Minn.1990). Thus, review of Scruggs' claims is appropriate on this appeal.

■ By summarily denying Scruggs' petition for relief, the postconviction court implicitly found that Scruggs' ineffective-assistance claims lacked merit. This court reviews a postconviction proceeding only to determine whether there is sufficient evidence to sustain the postconviction court's findings, and a postconviction court's decision will not be disturbed absent an abuse of discretion. *Gustafson v. State*, 477 N.W.2d 709, 712 (Minn.1991).

■ When determining whether to grant a defendant a new trial on the ground of ineffective assistance of counsel, this court applies the two-part test set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Gates v. State*, 398 N.W.2d 558, 561 (Minn.1987). First, the defendant must prove that counsel's representation fell below "an objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064. Second, the defendant must prove that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. A "reasonable probability" is a probability "sufficient to undermine confidence in the outcome." *Id.* In determining whether the defendant has made the requisite showing of prejudice, the court considers all the evidence before the judge or jury. *Id.* at 695–96, 104 S.Ct. at 2068–69.

Experienced trial counsel represented Scruggs at trial and on appeal. At the postconviction hearing, the defense attorney testified that he had known Scruggs for "some time" before Kreitz's murder and that he had decided to take Scruggs' case because he believed Scruggs was innocent. Following the trial, Scruggs asked trial counsel to be his appellate counsel.

Scruggs' first question about his representation regards potentially exculpatory evidence which the jury never heard. Defense counsel attempted to introduce into evidence a police report by Officer Lussier containing Kreitz's statement that a man named "Shaboo" was her accomplice in the gun store burglary. The prosecution objected, and the trial judge ruled the report inadmissible hearsay. The ruling was not made on the record, and defense counsel withdrew the report without making an offer of proof for the record.

Scruggs argues at length that Kreitz's statement in the police report is admissible under Minn.R.Evid. 804(b)(3) (statement against declarant's penal interest), Minn. R.Evid. 803(24) (the "catch-all" hearsay exception), and the sixth amendment right to present a defense. Scruggs further asserts that counsel was incompetent for failing to make an offer of proof with respect to this potentially admissible and exculpatory evidence. Regardless, we do not need to consider whether Kreitz's statement was indeed admissible because Scruggs cannot carry his burden on the second prong of the *Strickland/Gates* test. Before evaluating the reasonableness of counsel's failure to preserve the error, we must consider whether the evidence would have made any difference in the outcome. *Gates*, 398 N.W.2d at 562 (rejecting ineffective-assistance claim without considering first prong of the *Strickland* test because petitioner did not prove that the result of the trial would have been different but for counsel's alleged mistakes).

It is very doubtful that Kreitz's statement would have persuaded the jury that "Shaboo" was the fleeing suspect and that Scruggs was not involved in the burglary. Kreitz made the statement under circumstances strongly suggesting that she fabricated the "Shaboo" story. Kreitz would have known about the "two shots to the head" penalty for snitching to police, so she was under pressure to throw suspicion away from a Disciples member. No evidence (apart from Kreitz's statements to police) corroborates the existence of "Shaboo." Defense counsel testified that he did not recall any other police reports or witness statements naming "Shaboo." Scruggs admitted at the postconviction hearing that he did not know anyone called "Shaboo" and had not heard of "Shaboo" prior to learning of Kreitz's statement.

Moreover, even if the jury believed Kreitz's statement and concluded that Scruggs was not the fleeing suspect, the only potential impact of this conclusion would have been to weaken slightly Scruggs' motive for killing Kreitz. The evidence presented at trial indicated that Scruggs believed Kreitz had "snitched" on him. The police told Scruggs on October 7, 1985, that he and the Disciples were suspects in the burglary. *Scruggs I* at 710. Witnesses testified that Scruggs called Kreitz a "snitch." *Id.* The jury heard the testimony of several witnesses that Scruggs actually ordered Kreitz's killing, and we reviewed and affirmed the sufficiency of this evidence to sustain the conviction in *Scruggs I.* Under these circumstances, Scruggs cannot show a "reasonable probability" that the outcome of trial would have been different had the court admitted Kreitz's statement into evidence.

Moreover, the point is not whether Scruggs participated in the gun store burglary, but whether he participated in the conspiracy to murder Kreitz. The evidence was overwhelming that Scruggs headed the gang and that he plotted, organized, and ordered the murder of Kreitz because he felt that Kreitz threatened the security of the group.

Scruggs also claims that his trial counsel rendered ineffective assistance by failing to call three potential defense witnesses. A defendant has a heavy burden in establishing such a claim:

> Which witnesses to call at trial and what information to present to the jury are questions that lie within the proper discretion of trial counsel. Such trial tactics should not be reviewed by an appellate court, which, unlike the counsel, has the benefit of hindsight. Counsel must, after all, have the flexibility to represent a client to the fullest extent possible.

*State v. Jones*, 392 N.W.2d 224, 236 (Minn. 1986) (citation omitted). Moreover, there is a "strong presumption that a counsel's performance falls within the wide range of 'reasonable professional assistance.'" *Id.* (citation omitted). We find no merit in this claim.

Finally, appellant claims that his indictment was defective. Appellant raised this and several other issues on direct appeal; we found then that they lacked merit.

Accordingly, the district court's denial of postconviction relief is affirmed.