**STATE of Minnesota, Respondent,**

v.

**Ronald Lewis GREER, Appellant.**

No. C9–02–1382.

Supreme Court of Minnesota.

May 29, 2003.

Mike Hatch, Attorney General, St. Paul, Amy Klobuchar, Hennepin County Attorney, David C. Brown, Assistant Couty Attorney, Minneapolis, for respondent.

John M. Stuart, State Public Defender, Lawrence W. Pry, Assistant Public Defender, Minneapolis, for appellant Ronald Lewis Greer.

Ronald Lewis Greer, Bayport, pro se.

## OPINION

HANSON, Justice.

Appellant Ronald Lewis Greer was convicted of first- and second-degree murder. *State v. Greer*, 635 N.W.2d 82, 84 (Minn. 2001). On his original appeal, we remanded the conviction to the chief judge of the judicial district to determine whether a *Schwartz* hearing [1] was needed to inquire

---

1. A *Schwartz* hearing is used, in situations where jury impartiality has come into ques- tion, to permit examination of jurors on the record in the presence of counsel for all par-

into ex parte contacts between the trial judge and the jury during Greer's trial. *Id.* at 94. The chief judge ordered a *Schwartz* hearing, heard testimony from the trial judge and six of the twelve jurors, and denied Greer's motion for a new trial. We affirm.

Greer was convicted of first- and second-degree murder in the July 26, 1998, shooting death of Kareem Brown. *Greer,* 635 N.W.2d at 84. Greer moved the trial judge for a new trial on several grounds. *Id.* at 84–85. Among these was his claim that the trial judge engaged in improper ex parte contacts with the jury during the trial. *Id.* at 85. Greer requested a *Schwartz* hearing and asked the trial judge to recuse himself from deciding whether to grant that hearing. *Id.* at 92. Greer also moved the chief judge of the judicial district to remove the trial judge from the post-trial motions, and particularly the motion for a *Schwartz* hearing. *Id.* at 92–93. After the chief judge denied Greer's motion to have the trial judge removed, the trial judge denied Greer's motion for a *Schwartz* hearing and denied his motion for a new trial. *Id.* at 93.

Greer appealed to this court on four issues, including the denial of a *Schwartz* hearing. *Id.* at 84–85. We rejected Greer's first three arguments but remanded to the chief judge of the judicial district to decide whether the ex parte contacts between the judge and the jury warranted a *Schwartz* hearing. *Id.* at 85. We voiced our

> serious concern * * * that when counsel did, in the context of a motion for a *Schwartz* hearing, raise the jury contact issue, the motion was decided by the same trial court judge alleged to have engaged in improper conduct. When a

judge presides over a motion hearing to decide whether further inquiry is required into the propriety of the judge's own conduct, it raises questions about the impartiality of the court's decision. Because public trust and confidence in the judiciary depend on the integrity of the judicial decision-making process, we can ill afford to ignore this problem. We stress that nothing in the albeit sparse record indicates that the trial court's consideration of Greer's motion was not impartial. However, the mere appearance of partiality warrants concern. In light of this concern and the inadequacy of the record before us, we remand to the chief judge of the Fourth Judicial District for consideration of Greer's motion seeking a *Schwartz* hearing on the issue of the trial court's ex parte contacts with the jury.

*Id.* at 93–94.

On remand, Greer's motion for a *Schwartz* hearing came before a new chief judge. At a hearing on the motion, the trial judge testified that he "may have briefly communicated with the jury regarding scheduling and exchanged some pleasantries." All such contact, the trial judge testified, was "incidental."

Greer submitted affidavits from two law clerks who asserted that the trial judge appeared "visibly angry at defense counsel" during Greer's trial; that he told them he had "denied defense counsel's challenges for cause because he was angry with them"; and that, contrary to his common practice, he had not sent jury questionnaires to the attorneys. One clerk stated that "approximately two" of the questionnaires expressed the belief that "the Judge favored the State."

ties. *Schwartz v. Minneapolis Suburban Bus Co.,* 258 Minn. 325, 328, 104 N.W.2d 301, 303 (1960).

Greer also submitted his own affidavit, in which he stated that he had seen the trial judge enter and exit the jury room on a regular basis. Greer described a specific instance in which he heard laughter emanating from the jury room and then saw the trial judge exit the room, "laughing and giggling."

The chief judge granted Greer's motion for a *Schwartz* hearing, and the hearing was held on April 30, 2002. The chief judge summoned six of the twelve jurors, chosen at random, and all six testified at the *Schwartz* hearing.

One juror testified that he remembered one or two instances in which the trial judge asked if there was anything the jury needed, such as coffee. A second juror testified that the trial judge's ex parte communications were "about process kinds of things and not about * * * specifics of the case." A third juror testified that he remembered the trial judge explaining what "the role of the jury really was," clarifying the information the jurors had read from a booklet they had received. A fourth juror stated that she had no recollection of any ex parte communications between the trial judge and the jury whatsoever. A fifth juror testified that the trial judge made introductory comments to the jurors regarding the jury space. A sixth juror remembered the trial judge telling the jury that "if we were done, we could go eat."

None of the six jurors recalled any discussion with the trial judge regarding the reasons for procedural delays or the merits of the case. None remembered any episode of jury laughter similar to the one Greer described in his affidavit. All six agreed that ex parte comments from the trial judge had no influence on their verdict and that they had no reason to believe such comments had affected the verdicts of other jurors.

After the six jurors testified, defense counsel requested that the chief judge "bring in the remainder of the jurors for a second hearing." The state opposed any further testimony because the court had already "called in a fair cross section of the jury." The chief judge agreed to close the testimony and subsequently issued an order denying Greer's motion for a new trial.

Greer appeals this ruling, arguing that the district court abused its discretion by refusing to summon and question all twelve jurors who deliberated at trial. He asks for another remand so that the district court can "finish the *Schwartz* hearing." In his pro se brief, Greer also raises two new issues regarding his interrogation by police.

## I.

In *Schwartz v. Minneapolis Suburban Bus Co.*, we held that, in cases where jury impartiality was brought into question,

> rather than permit or encourage the promiscuous interrogation of jurors by the defeated litigant, we think that the better practice would be to bring the matter to the attention of the trial court, and, if it appears that the facts justify so doing, the trial court may then summon the juror before him and permit an examination in the presence of counsel for all interested parties and the trial judge under proper safeguards. If that were done, a situation such as we have here could not arise. A record then could be made which could be presented to this court if any doubt existed about the correctness of the trial court's ruling after such hearing.

258 Minn. 325, 328, 104 N.W.2d 301, 303 (1960). This procedure was later incorporated in Minn. R.Crim. P. 26.03, subd. 19(6), which provides:

Affidavits of jurors shall not be received in evidence to impeach their verdict. A defendant who has reason to believe that the verdict is subject to impeachment, shall move the court for a summary hearing. If the motion is granted the jurors shall be interrogated under oath and their testimony recorded. The admissibility of evidence at the hearing shall be governed by Rule 606(b) of the Minnesota Rules of Evidence.

We have held that the manner in which a district court conducts a *Schwartz* hearing is within that court's discretion. *State v. Olkon*, 299 N.W.2d 89, 109 (Minn.1980). The state argues that *Olkon* decided the question at issue here, because it likewise involved the questioning of six of the twelve jurors in a *Schwartz* hearing. *Id.* at 108. The six were chosen as follows:

Two of the six were jurors named in the document filed with the Court (a letter from Mr. Matthews—a TV investigator—and an affidavit of the father of one of the jurors) reciting alleged anti-Semitic conduct. A third juror was one who was named in an affidavit filed concerning a lunch-time contact with his employer, and, because his presence was needed to question him on that event, was also to be one of the jurors to be questioned about the anti-Semitic allegation. A fourth was one of the oldest jurors who was selected by the Court because Mr. Matthews' letter referred to "an older man" as a source of a statement indicating bias. The fifth juror was the foreperson of the jury, and the sixth was chosen at random from the remaining jurors to bring to 50% the jury representation at the hearing.

At the hearing, all of the six jurors called testified that they had not heard any anti-Semitic remarks during the deliberations. The juror who had had the contact with his employer testified that the contact had not influenced his decision-making. Therefore, the court denied defendant's motion for a new trial because of juror misconduct.

*Id.* at 108–09 (quoting from the trial court) (internal quotation marks omitted). Olkon argued on appeal that the district court's decision to call only six jurors was an abuse of discretion. We disagreed:

In this case, the trial court did not abuse its discretion in determining to call six jurors, four of whom were referred to in the allegations of misconduct. This is especially true in light of the fact that no juror misconduct was revealed by the testimony of the six jurors.

*Id.* at 109.

Appellant does not mention *Olkon* except to note the abuse of discretion standard it adopted for *Schwartz* hearings. His argument rests on (1) strong language in prior supreme court holdings discouraging ex parte contacts with jurors; (2) the fact that only six jurors were questioned and they "offered several different versions of events during the trial"; (3) the alleged egregiousness of the trial judge's contacts with the jurors; and (4) "the absence of any evidence that the other [six] jurors were unable to testify." In light of these facts, appellant argues, the chief judge's refusal to call the remaining six jurors constitutes an abuse of discretion.

As a preliminary matter, we do not regard *Olkon* as controlling precedent on the broad question of whether a district court's refusal to call more than six jurors in a *Schwartz* hearing is an abuse of discretion. The holding in *Olkon* was based on its facts. In *Olkon*, all four jurors potentially identified in the allegations of impropriety were called at the *Schwartz* hearing. Neither their testimony nor the testimony of two other jurors provided any evidence that the verdict was subject to impeachment. *See id.* at 109.

In general, we encourage district courts to make all reasonable efforts to hear from all of the jurors who took part in the verdict that is being reviewed in a *Schwartz* hearing. Nonetheless, under the circumstances of this case, we cannot say that the chief judge abused his discretion when he denied Greer's motion to call the remaining six jurors. Because all of the alleged ex parte contacts were reported to have taken place in the presence of all the jurors, any one of the jurors was theoretically capable of describing the contacts. The six jurors who did testify gave no indication that the contacts were improper or that there were any grounds to impeach the verdict. We conclude that the district court's conduct of the *Schwartz* hearing was not an abuse of discretion.

## II.

In his pro se brief, Greer makes two additional arguments regarding statements he made during police interrogation. We have previously held that "where direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." *State v. Knaffla,* 309 Minn. 246, 252, 243 N.W.2d 737, 741 (Minn.1976). We likewise hold that when a case returns to an appellate court after remand, the matters raised and resolved in the original appeal that resulted in the remand, and any claims that were known but not raised in the original appeal, will not be considered.

Affirmed.