Ronald Lewis GREER, petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. C6–03–216.

Supreme Court of Minnesota.

Jan. 15, 2004.

Lawrence W. Pry, Assistant State Public Defender, Minneapolis, MN, for Appellant.

Mike Hatch, Minnesota Attorney General, St. Paul, MN, Amy J. Klobuchar, Hennepin County Attorney, David C. Brown, Assistant County Attorney, Minneapolis, MN, for Respondent.

## OPINION

GILBERT, Justice.

Appellant Ronald Lewis Greer was convicted of first- and second-degree murder as a result of the July 26, 1998 shooting death of Kareem Brown. *State v. Greer,* 635 N.W.2d 82, 84 (Minn.2001) (*"Greer I"*). His trial took place in Hennepin County and was presided over by Judge Harry Crump. *Id.* During the course of the pretrial proceedings, defense counsel made several attempts to remove Judge Crump. On May 4, 1999, defense counsel asked

Judge Crump to recuse himself. Judge Crump denied this motion. The following day, defense counsel renewed the motion. This motion was also denied. Defense counsel based these two motions on an *ex parte* meeting between Judge Crump and the prosecutor.

After Judge Crump denied the second recusal motion, defense counsel filed another removal motion with then-Chief Judge Daniel Mabley. Defense counsel once again argued that Judge Crump's *ex parte* contact with the prosecutor was improper. Judge Mabley denied the motion and instructed the parties to return to Judge Crump for further proceedings.

In a post-trial motion, defense counsel claimed that Judge Crump had engaged in numerous *ex parte* contacts with the jury before and during deliberations. Defense counsel requested that Judge Crump recuse himself from deciding whether to grant a hearing on the issue of his *ex parte* contacts with the jury. *Greer I*, 635 N.W.2d at 92. The motion sought a hearing on this matter before the chief judge. The same day, appellant filed a motion for a new trial with the chief judge. This motion requested that a *Schwartz* hearing be conducted by the chief judge to determine the nature and extent of the *ex parte* contacts between the trial judge and the jury. *Id.* The chief judge denied appellant's motion and ordered that the motion for a new trial should be heard by Judge Crump. *Id.* at 92–93. Appellant then brought a second motion before the chief judge, this time seeking to have Judge Crump removed. *Id.* at 93. In support of this motion, defense counsel argued that Judge Crump possessed personal knowledge of disputed evidentiary facts and that his impartiality might reasonably be questioned. The motion was denied by the chief judge. That same day, Judge Crump denied all of appellant's remaining post-trial motions. *Id.*

Appellant filed a notice of appeal to this court from the judgment of conviction, raising four issues in support of his appeal. We denied appellant's requests on all but one claim: that Judge Crump erred when he refused to grant a hearing before an impartial judge to determine the extent of any *ex parte* communications with the jury. We then remanded the case to the chief judge of the district court with instructions to hear and decide the motion for a *Schwartz* hearing. *Id.* at 93–94.

On remand, Chief Judge Kevin Burke first took testimony from Judge Crump to determine the extent of any *ex parte* contacts with the jury. Judge Crump testified that he "may have briefly communicated with the jury regarding scheduling and exchanged some pleasantries." All such contact, Judge Crump testified, was "incidental." *State v. Greer*, 662 N.W.2d 121, 122 (Minn.2003) ("*Greer II*"). Appellant submitted his own affidavit, in which he stated that he had seen Judge Crump enter and exit the jury room on a regular basis. Appellant described a specific instance in which he heard laughter emanating from the jury room and then saw Judge Crump exit the room, "laughing and giggling." *Id.* at 123. The chief judge granted appellant's motion for a *Schwartz* hearing, and the hearing was held on April 30, 2002.

The chief judge summoned six of the twelve jurors, chosen at random, and all six testified at the *Schwartz* hearing. *Id.* None of the six jurors recalled any discussion with Judge Crump regarding the reasons for procedural delays or the merits of the case. All six agreed that *ex parte* comments from Judge Crump had no influence on their verdict and that they had no reason to believe such comments had affected the verdicts of other jurors. The

chief judge agreed to close the testimony and subsequently issued an order denying appellant's motion for a new trial. Appellant appealed this ruling, claiming that the entire jury should have been questioned. We concluded that the chief judge's conduct of the *Schwartz* hearing was not an abuse of discretion. *Id.* at 125.

Sometime following the original trial, defense counsel obtained affidavits from two former law clerks of Judge Crump. We noted these affidavits in *Greer II. Id.* at 122. These affidavits were filed with a petition for postconviction relief, and were received in the record without objection. Defense counsel brought these affidavits to the attention of Chief Judge Burke. The chief judge allowed appellant 30 days to decide whether to formally pursue a claim connected with the affidavits, per Minn. Stat. 590.04 (2002). Appellant filed the current claim of "actual bias" on January 23, 2002, 3 months before the *Schwartz* hearing, which we reviewed in *Greer II.* The current matter, concerning the affidavits, was therefore pending concurrent to the allegations discussed in *Greer II.*

The first former clerk submitted an affidavit dated January 14, 2002. The first clerk noted that Judge Crump "told me he denied defense counsel's challenges for cause because he was angry with them." The second former clerk submitted an affidavit dated January 15, 2002. The second clerk similarly noted that Judge Crump "informed me and my co-clerk * * * that he was angry with defense counsel and denied defense challenges for cause because he was angry with them." The second clerk also noted that Judge Crump was angry "because of his tone of voice, his agitated manner and his low frustration level." Judge Crump passed out questionnaires to the jurors following the trial. The second clerk claimed that two of the jurors noted that they believed Judge

Crump favored the prosecution. The second clerk further claimed that Judge Crump instructed the second clerk not to send the questionnaires to the attorneys, which was an unusual request. The second clerk's impression was that "he did not want others to see them because of the claim of bias by the [c]ourt."

Based on the law clerks' affidavits, appellant requested postconviction relief, claiming that the affidavits constituted new evidence that allows a claim of "actual bias." The matter was heard by Chief Judge Burke. In his December 3, 2002 order, the chief judge found that the grounds upon which the petition was based were "all relate[d] to the claim that Judge Crump was biased against Petitioner and his attorneys." The chief judge denied appellant's petition. Appellant filed a notice of appeal on February 4, 2003. We affirm the postconviction court's ruling.

## I.

A petition for postconviction relief is a collateral attack on a conviction that carries a presumption of regularity. *Hummel v. State,* 617 N.W.2d 561, 563 (Minn.2000); *State ex rel. Gray v. Tahash,* 279 Minn. 248, 250, 156 N.W.2d 228, 229 (1968). We review a postconviction court's decision only to determine whether sufficient evidence supports the court's findings. *Sutherlin v. State,* 574 N.W.2d 428, 432 (Minn.1998); *Scruggs v. State,* 484 N.W.2d 21, 25 (Minn.1992). We overturn a postconviction court's decision only if the court abused its discretion. *Wilson v. State,* 582 N.W.2d 882, 884 (Minn.1998); *Scruggs,* 484 N.W.2d at 25.

Postconviction relief can be petitioned for in Minnesota pursuant to Minn. Stat. 590.01, subd. 1 (2002). A postconviction proceeding may require an evidentiary hearing. *See* Minn.Stat. 590.04 (2002). At the hearing, a petitioner bears the bur-

den of establishing by a fair preponderance of the evidence facts that warrant a reopening of the case. *Hummel,* 617 N.W.2d at 564. In order to meet that burden, petitioner's allegations must be supported with more than mere argumentative assertions that lack factual support. *Id.* However, if the petition, files, and record "conclusively show that the petitioner is entitled to no relief," a court need not conduct an evidentiary hearing. *Id.* (quoting Minn.Stat. 590.04, subd. 1).

■ In *State v. Knaffla,* we established that once a petitioner has directly appealed a conviction, all matters raised in that appeal, and all matters that were known but not raised, "will not be considered upon a subsequent petition for postconviction relief." 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976). We have recognized two exceptions to the rule in *Knaffla.* First, a postconviction court may hear and consider a claim that was previously known but not raised if the claim is so novel that its legal basis was not reasonably available at the time of the direct appeal. *Roby v. State,* 531 N.W.2d 482, 484 (Minn.1995) (citation omitted). Second, even if the claim contained in a petition for postconviction relief was known at the time of direct appeal or its legal basis was reasonably available, we still allow substantive review of the claim when fairness so requires and the petitioner did not "deliberately and inexcusably" fail to raise the issue on direct appeal. *Id.* (citation omitted); *accord Doppler v. State,* 660 N.W.2d 797, 801–02 (Minn.2003).

■ In the present matter, the postconviction court found that appellant had

not made an affirmative showing of prejudice. Moreover, all of [appellant's] claims were already raised and thoroughly examined on direct appeal or were available at the time of appeal. [Appellant] provides no claims 'so novel that it can be said its legal basis was not reasonably available at the time direct appeal was taken.'

Further, the postconviction court found that all new allegations "relate[d] to the claim that Judge Crump was biased." Appellant argues that the affidavits of Judge Crump's law clerks should be considered as new evidence that was not previously available. These affidavits, appellant argues, constitute direct evidence of Judge Crump's actual bias (or "smoking guns"), and were not available to appellant until after we had remanded his case. Appellant does not divulge how he managed to obtain these law clerk affidavits, or why they were not previously available. Nonetheless, appellant argues that the affidavits should overcome the *Knaffla* bar. The affidavits, argues appellant, allow for a new claim of "actual bias." [1]

■ As the postconviction court noted, impartiality is the very foundation of the American judicial system. *See Payne v. Lee,* 222 Minn. 269, 277, 24 N.W.2d 259, 264 (1946). Rule 26.03, subd. 13(3) of the Minnesota Rules of Criminal Procedure provides, "[n]o judge shall preside over a trial or other proceeding if that judge is

---

1. Appellant requests that this court consider the law clerks' affidavits as compelling newly-discovered evidence. The test for newly-discovered evidence is articulated in *Rainer v. State,* 566 N.W.2d 692, 695 (Minn.1997), and requires that (1) the evidence was not known to the defendant or his counsel at the time of trial; (2) the evidence could not have been discovered through due diligence before trial; (3) the evidence is not cumulative, impeaching, or doubtful; and (4) the evidence would probably produce an acquittal or a more favorable result. Keeping in mind the *Schwartz* hearing conducted by the chief judge, appellant does not show anything new that would indicate the affidavits would probably produce an acquittal or a more favorable result.

disqualified under the Code of Judicial Conduct." Canon 3D(1) of the Minnesota Code of Judicial Conduct provides that "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where: (a) the judge has a personal bias or prejudice concerning a party or a party's lawyer * * *." The Advisory Committees Commentary to Canon 3D(1) explains:

> Under this rule, a judge is disqualified whenever the judge's impartiality might reasonably be questioned, regardless whether any of the specific rules in Section 3D(1) apply. * * * A judge should disclose on the record information that the judge believes the parties or their lawyers might consider relevant to the question of disqualification, even if the judge believes there is no real basis for disqualification.

*Commentary to the Minnesota Code of Judicial Conduct,* Comments—Canon 3 (Nov. 22, 1995).

◼ We have noted that Canon 3D(1) is not purely aspirational in its terms, because it uses the operative verb "shall disqualify." *Powell v. Anderson,* 660 N.W.2d 107, 114–15 (Minn.2003). The grounds for disqualification in Canon 3D(1) are stated broadly, leaving considerable room for interpretation in their application to any given set of circumstances. *Id.* at 115. Canon 3D(1) "does not provide a precise formula that can automatically be applied." *Id.*

The postconviction court found that appellant did not make an affirmative showing of prejudice. Similarly, in *Greer I,* we thoroughly evaluated circumstances surrounding appellant's trial, and found no substantive errors in the trial conduct. The United States Supreme Court, in the context of evaluating whether to recuse a judge under a federal statute, has stated that

opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.

*Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). Judge Crump's rulings were not found to be in error during appellant's two appeals to this court, or during appellant's *Schwartz* proceeding.

◼ Appellant made numerous attempts to recuse Judge Crump. For example, during pretrial motions on May 4, 1999, appellant asked Judge Crump to recuse himself based on *ex parte* contacts with the prosecutor. After Judge Crump denied this motion, appellant renewed his motion on May 5, 1999. This second motion was denied as well. Appellant then went to Chief Judge Mabley to request removal of Judge Crump. Chief Judge Mabley denied this motion. Later, we remanded to the district court to conduct a *Schwartz* hearing to look into Judge Crump's alleged jury misconduct. *Greer I,* 635 N.W.2d at 94. Chief Judge Burke conducted these proceedings and jurors never asserted that they felt Judge Crump influenced them in any manner through any type of actions or alleged bias. *Greer II,* 662 N.W.2d at 124.

Appellant has appealed numerous times based on his attempt to remove Judge Crump for bias. None of Judge Crump's law clerks' assertions appear to be "so novel" to surpass the *Knaffla* bar in light of the bias claims that had been already reviewed so many times. Rather, they vaguely point to "challenges" that Judge Crump may have erroneously denied. Moreover, in *Greer I,* we examined the voir dire interaction between defense counsel and prospective jurors. We concluded:

[Appellant's] ability to conduct an adequate voir dire of these prospective jurors was not infringed and * * * the trial court did not frustrate the purposes of voir dire by preventing [appellant] from discovering bases for challenge or inhibiting him from making an informed exercise of peremptory challenges.

*Greer I,* 635 N.W.2d at 89.

Even if presented during appellant's numerous recusal motions, it is unlikely that the law clerks' affidavits would have formed a basis in themselves for removal of Judge Crump or a specific juror or change in the composition of the jury panel. We agree with the Minnesota Court of Appeals, which has held that "[p]rior adverse rulings * * * clearly cannot constitute bias * * *." *Olson v. Olson,* 392 N.W.2d 338, 341 (Minn.App.1986) (citing *United States v. Anderson,* 433 F.2d 856, 860 (8th Cir.1970) (holding that prior rulings do not establish bias, even if erroneous)). A new trial is required when the trial court departs from the standards of judicial impartiality and prejudices the losing party's rights. *Hansen v. St. Paul City Ry. Co.,* 231 Minn. 354, 361–62, 43 N.W.2d 260, 265 (1950). We have not found any erroneous rulings in our prior evaluations of this case. The record supports the trial court's denial of challenges for cause. The record further supports the postconviction court's finding that these new claims are related to the past allegations of bias against Judge Crump. We therefore hold that the postconviction court did not abuse its discretion in denying appellant's claim regarding judicial bias because it is barred under the doctrine articulated in *State v. Knaffla.*

Affirmed.