# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2263

_____

Ronald Lewis Greer, II,                    *
                                           *
        Petitioner - Appellant,            *
                                           *   Appeal from the United States
        v.                                 *   District Court for the
                                           *   District of Minnesota.
State of Minnesota;                        *
David Carbo, Warden,                       *
                                           *
        Respondents - Appellees.           *

_____

Submitted: December 13, 2006
Filed: July 12, 2007

_____

Before LOKEN, Chief Judge, JOHN R. GIBSON, and MURPHY, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Ronald Lewis Greer appeals an order and judgment from the district court[1] denying his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.[2] Greer

_____

[1]The Honorable James M. Rosenbaum, Chief Judge, United States District Court for the District of Minnesota, adopting the report and recommendation of the Honorable Raymond L. Erickson, United States Magistrate Judge for the District of Minnesota.

[2]The actual order from the district court dismissed Greer's petition with prejudice. For our purposes, this is a distinction without a difference.

attacks his convictions for first-degree and second-degree murder in connection with the shooting death of Kareem Brown. He argues that the Minnesota courts erred by holding that Greer waived a claim of judicial bias and that the trial court denied Greer's right of confrontation and his right to testify on his own behalf. The district court rejected Greer's claims under the deferential standards of 28 U.S.C. § 2254 as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214. We affirm.

Kareem Brown was shot to death on July 26, 1998, in South Minneapolis. The murder weapon, a semi-automatic pistol, was found in a trash can one block from the murder scene. At trial, several witnesses implicated Greer, testifying that they saw Greer or someone matching Greer's description in the area around the time that the murder occurred. Greer's defense was alibi. He and several other witnesses testified that Greer was visiting a friend when Brown was shot.

Greer was arrested in Detroit, Michigan on August 11, 1998, and charged with first-degree and second-degree murder under Minn. Stat. §§ 609.185(1) (1998) and 609.19(1) (2000). After his arrest, two Minneapolis police officers flew to Detroit and interviewed Greer on two separate occasions. According to the police, officers attempted to record the first conversation, but for an unknown reason were unsuccessful. There was some disagreement concerning the content of the first conversation. Greer testified that the police harassed him and told him that they had evidence against him but that he would be released if he could tell the police who committed the murder. During the second interview, which was recorded, Greer told the police that he was present at the scene of the shooting and that it was an individual named "E" who was the gunman. During a third interview with the police in Minneapolis, Greer again implicated E as the gunman, first explaining that he was not at the scene of the crime, but then changing his story and stating that he was with E when the shooting occurred.

At trial, Greer testified on his own behalf. The defense sought to question him extensively about the circumstances surrounding his statements to the police and his state of mind at the time, but the trial court limited Greer's testimony. He did testify, however, that his cell in Detroit was filthy and infested with rats and roaches. Greer also claimed that he told the police that he was at the scene of the crime because he wished to get out of jail. The prosecution presented testimony from Deanna Strom, whose boyfriend, Aaron Jones, had observed Greer moments before the murder. The defense wished to impeach her with evidence from a 1997 conviction for providing false information to the police in violation of Minn. Stat. § 609.506 (2000). The trial court, however, precluded the defense from impeaching Strom, stating that an impeachment by the defense would be misused.

Greer was convicted on both counts of murder on May 13, 1999. Greer appealed his conviction and sentence to the Minnesota Supreme Court on September 10, 1999. He argued the following issues: (1) the trial court improperly limited voir dire questioning; (2) the trial court violated Greer's right to confront witnesses by precluding evidence of Strom's prior conviction; (3) the trial court violated Greer's right to present a meaningful defense by limiting testimony from Greer regarding his pretrial statements to the police; and (4) the trial court erred in refusing to grant a hearing concerning ex parte contacts between the trial court and the jury. The Minnesota Supreme Court rejected all of Greer's claims except the claim regarding contacts between the trial court and the jury, which was remanded to the chief judge of the judicial district for consideration. State v. Greer, 635 N.W.2d 82 (Minn. 2001) (Greer I).

On remand, the chief judge ordered a Schwartz[3] hearing, at which the trial judge and six of the twelve jurors testified, and then denied Greer's motion for a new trial, which the Supreme Court of Minnesota affirmed. State v. Greer, 662 N.W.2d 121 (Minn. 2003) (Greer II). Sometime after trial but before the Schwartz hearing, Greer obtained and submitted affidavits from two law clerks for the trial judge who stated that "the trial judge appeared 'visibly angry at defense counsel' during Greer's trial; that he told them he had 'denied defense counsel's challenges for cause because he was angry with them'; and that, contrary to his common practice he had not sent jury questionnaires to the attorneys." Id. at 122. The Minnesota Supreme Court did not address the law clerk affidavits submitted by Greer in its decision, instead ruling that the decision by the chief judge to examine six of the twelve witnesses was not an abuse of discretion. Id. at 125.

Greer submitted a claim of "actual bias" in connection with the law clerk affidavits on January 23, 2002, which was denied by the chief judge; the Minnesota Supreme Court affirmed. Greer v. State, 673 N.W.2d 151 (Minn. 2004) (Greer III). The Minnesota Supreme court ruled that Greer had failed to raise a timely claim and that the claim did not meet either of the two exceptions to this rule recognized by Minnesota courts. Id. at 156-57. The Minnesota Supreme Court has established that all matters known but not raised on appeal "will not be considered upon a subsequent petition for postconviction relief." State v. Knaffla, 243 N.W.2d 737, 741 (Minn. 1976). A postconviction court, however, may hear and consider new claims if the "claim is so novel that it can be said that its legal basis was not reasonably available to counsel at the time the direct appeal was taken and decided." Roby v. State, 531 N.W.2d 482, 484 (Minn. 1995) (quotation marks omitted). Minnesota courts also allow substantive review of a claim "if fairness so requires and if the petitioner did not

---

[3]In Minnesota courts, a Schwartz hearing is used when jury impartiality is disputed and allows for the examination of the jurors on the record in the presence of counsel for all parties. Schwartz v. Minneapolis Suburban Bus Co., 104 N.W.2d 301, 303 (1960).

deliberately and inexcusably fail to raise the issue on direct appeal." Id. (quotation marks omitted).

Greer petitioned for federal habeas relief. The district court, adopting the report and recommendation of the Magistrate Judge, denied Greer's petition, holding that Greer's claim of judicial bias was procedurally barred and that Greer's remaining claims did not entitle him to habeas relief. The district court did issue a certificate of appealability on all of Greer's claims, and Greer now brings the present appeal.

## I.

In the interests of finality and federalism, federal courts are bound by AEDPA to exercise a "limited and deferential review of underlying state court decisions." Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003). Under this standard, federal courts may not grant relief to a state prisoner unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (2000).

A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. at 407-08. When a district court denies a habeas petition, we review the district court's factual findings

for clear error and its legal conclusions de novo. Johnston v. Luebbers, 288 F.3d 1048, 1051 (8th Cir. 2002).

## II.

Greer argues that the affidavits submitted demonstrate judicial bias and that the Minnesota Supreme Court erred in ruling that the claim was waived. As a threshold matter, it is well-settled that federal courts are precluded from reviewing "a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991). "The doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." Id. at 729-30. In such instances, the state prisoner "forfeits his right to present his federal claim through a federal habeas corpus petition, unless he can meet strict cause and prejudice or actual innocence standards." Clemons v. Luebbers, 381 F.3d 744, 750 (8th Cir. 2004).

Greer makes numerous arguments as to why the district court erred in holding that his claim that the law clerk affidavits established "actual bias" was procedurally barred. Nearly all of his arguments, however, invite us to review the Minnesota Supreme Court's decision for error, which we are not permitted to do except in extraordinary circumstances not present here. See Sweet v. Delo, 125 F.3d 1144, 1151 (8th Cir. 1997) (stating that "[i]t is not the office of a federal habeas court to determine that a state court made a mistake of state law"); Lee v. Kemna, 534 U.S. 362, 376 (2002) (explaining circumstances in which the application of state law will not prevent adjudication of the federal issue). Greer does argue, however, that the Minnesota Supreme Court reached the merits of his claim, thus opening the decision to review. See Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991) ("If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar

to federal-court review that might otherwise have been available."). According to Greer, the Minnesota Supreme Court's opining on the likelihood of the affidavits forming a basis for the trial judge's removal constituted an adjudication of his claim on the merits.

Reviewing the court's decision, it is evident that Greer's petition was denied as a matter of state procedural law, and that the court did not reach the merits of his federal claim. The court did conclude that it was "unlikely that the law clerks' affidavits would have formed a basis for removal of Judge Crump." Greer III, 673 N.W.2d at 157. This analysis of Greer's claim, however, was wholly within the context of determining whether the postconviction court was correct in concluding that the doctrine articulated in Knaffla applied. At no point did the Minnesota Supreme Court attempt an adjudication of Greer's constitutional claim, and a limited discussion of the substance of Greer's claim is insufficient to trigger review by this court.

Greer also asserts that cause exists for his procedural default. For the purpose of reviewing a defaulted constitutional claim, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). According to Greer, "the affidavits were 'not available' to counsel during the direct appeal." He provides no elaboration, however, as to why the affidavits were unavailable, stating only that "[a]fter the hearing, Mr. Greer obtained two affidavits signed by law clerks of Judge Crump."

Greer fails to show cause for his procedural default. He admits that he obtained the affidavits but fails to offer any explanation as to why he waited as long as he did. As the Minnesota Supreme Court points out, Greer "made numerous attempts to recuse Judge Crump," Greer III, 673 N.W.2d at 156, dating back to a pretrial motion

for recusal on May 4, 1999. Considering that Greer suspected judicial bias during the course of the trial and obtained the affidavits through his own effort, we are unable to conclude that the cause of Greer's default is "something external to [the appellant], something that cannot fairly be attributed to him." Coleman, 501 U.S. at 753 (emphasis in original). We therefore conclude that Greer's claim of "actual bias" is procedurally barred.

## III.

The confrontation clause of the Sixth Amendment guarantees to a defendant "the right of effective cross-examination" of the witness. Davis v. Alaska, 415 U.S. 308, 318 (1974). Greer argues that the trial court violated that right when it prevented Greer from impeaching the testimony of Deanna Strom on the basis of her 1997 conviction for providing false information to the police.

On appeal by Greer, the Minnesota Supreme Court determined that the trial court's ruling "was a violation of Rule 609(a)(2) of the rules of evidence," Greer I, 635 N.W.2d at 90, and thus a violation of Greer's right to impeach the witness. Such violations are subject to harmless error analysis. See Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986). The Minnesota Supreme Court correctly noted the appropriate analysis. Greer I, 635 N.W.2d at 90. The court then concluded that the trial court's error was harmless beyond a reasonable doubt for two reasons. First, the court explained that the "essence of Strom's trial testimony was that [prosecution witness] A. Jones told her that he had information related to Brown's death within a week of the killing." Id. The Minnesota Supreme Court also noted that "Strom's testimony was in part corroborated by that of Paula Morrison, who testified that A. Jones told her he had witnessed something within a week of Brown's death." Id. Second, the court noted that, while the jury never learned of the actual conviction, "Strom's cross-examination revealed the facts underlying her prior conviction, as well as information [regarding payments by the police] suggesting an ulterior motive for her testimony."

Id. at 91. The court concluded that "had the excluded evidence been fully realized, the outcome of Greer's trial could not have been different." Id.

Greer argues that excluding Strom's testimony was not harmless because Strom provided key information to the police at an early stage in the investigation. According to Greer, since Strom helped lead the police to Greer, no error concerning her trial testimony could ever be harmless. This argument is without merit. The fact that Strom played a vital role in the investigation does not affect the relative importance of her trial testimony and the consequences of the trial court's error. As the Minnesota Supreme Court explained, Strom provided limited testimony and the facts surrounding her conviction were ultimately disclosed under cross-examination. Regardless of Strom's role in the police investigation, under the deferential standard established by AEDPA, we must conclude that the Minnesota Supreme Court's harmless error analysis did not result in a decision "that was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1).

IV.

Greer argues that the trial court committed error by limiting testimony concerning the circumstances surrounding his statements to the police and his state of mind at the time of his arrest. Criminal defendants possess the constitutional right "to a fair opportunity to defend against the State's accusations." Chambers v. Mississippi, 410 U.S. 284, 294 (1973). The Minnesota Supreme Court, after reviewing Greer's claim, determined that the trial court was within its discretion to limit Greer's testimony and therefore did not err. Greer I, 635 N.W.2d at 92. Greer relies on the Supreme Court's decision in Crane v. Kentucky, 476 U.S. 683 (1986), to argue that the trial court erred in limiting his testimony and that the Minnesota Supreme Court's decision was an unreasonable application of federal law. In Crane, the Supreme Court ruled that the Supreme Court of Kentucky erred in limiting testimony from a criminal

defendant regarding the circumstances surrounding his confession. The Court held that "the physical and psychological environment that yielded the confession can also be of substantial relevance to the ultimate factual issue of the defendant's guilt or innocence." Id. at 689. The Court expressed particular concern that if a trial court can prevent a defendant from explaining the circumstances surrounding a confession, "the defendant is effectively disabled from answering the one question every rational juror needs answered: If the defendant is innocent, why did he previously admit his guilt?" Id.

Greer raised the same argument before the Minnesota Supreme Court. The court distinguished Crane from the instant case by emphasizing the extent to which Greer did explain the circumstances surrounding his comments to the police. The court described in detail Greer's testimony:

> Greer was able to present some evidence regarding the circumstances surrounding his pretrial statements and his state of mind at the time. He testified, for instance, that at the time of his arrest "the police had their guns drawn," that he saw them "grab [his girlfriend] from her truck," and that an officer "put his feet in [his] back" and handcuffed him while he was lying on the ground. He also described to the jury the condition of his Detroit jail cell and his inability to fall asleep the night before his interviews with two Minneapolis police officers.

> In addition, he testified on the issue of his state of mind during the interviews and explained his motivation for making the statements. He told the jury that he placed himself at the scene of the crime during the second interview in Detroit "[t]o kind of make [himself] into an eyewitness so [he] could get out of jail. . . ."

> At the same time, Greer was not permitted to testify that shortly after his arrest he heard a police report indicating that there were shots fired at the building where his friends lived. The trial court also excluded Greer's testimony on the subject of his past experiences with the Detroit police, which included a friend being shot at by a police officer.

Greer I, 635 N.W.2d at 92.   The court concluded by stating that "Greer was able to directly attack the credibility of his pretrial statements by describing for the jury why he admitted to being at the scene.  The portions of Greer's testimony excluded by the trial court were, by contrast, only marginally relevant to that issue."  Id. (internal citation omitted).

We conclude that the affirmance of the trial court's limitation of Greer's testimony did not result in a decision "that was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). The Minnesota Supreme Court addressed the relevant United States Supreme Court precedent and reasoned persuasively that the trial court's decision to limit Greer's testimony was not a violation of his constitutional rights.  There is no evidence that Greer was unduly prejudiced in his attempt to explain the circumstances surrounding his statements to the police and we agree with the district court that the Minnesota Supreme Court's decision was not objectively unreasonable.

V.

For the foregoing reasons, we affirm the district court's decision to deny Greer's habeas petition.

_____