*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1499**

State of Minnesota,
Respondent,

vs.

Andrea Deshawn Wilkes,
Appellant.

**Filed August 15, 2016
Affirmed
Bjorkman, Judge**

Hennepin County District Court
File No. 27-CR-14-29878

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Jean Burdorf, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Richard Schmitz, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Rodenberg, Presiding Judge; Peterson, Judge; and Bjorkman, Judge.

**U N P U B L I S H E D   O P I N I O N**

**BJORKMAN**, Judge

Appellant challenges his criminal-sexual-conduct conviction, arguing that the district court abused its discretion by denying his motion for a mistrial and that the

prosecutor committed reversible misconduct by eliciting improper testimony and impermissibly focusing on appellant's body odor. We affirm.

## FACTS

On September 23, 2014, S.M. entered a hospital reporting that she had been sexually assaulted. A sexual-assault nurse observed that S.M. had injuries in multiple locations, including the back of her head, arms, hands, and legs. Hospital personnel contacted law enforcement, who interviewed S.M. at the hospital. S.M. reported that she was walking on Hennepin Avenue in downtown Minneapolis at approximately 1:00 a.m. when a man approached her from behind and stuck something "hard and metallic" against her back. He instructed her to follow him, grabbed her arm, and led her into a nearby parking lot where he forced her to perform oral sex. S.M. described her assailant as an African-American male with a scruffy beard and an eye patch, and stated that he "smelled homeless." She further reported that he was wearing a white t-shirt and black shorts that appeared to be either swim trunks or basketball shorts.

The officer who interviewed S.M. later encountered appellant Andrea Deshawn Wilkes. After reviewing a photographic lineup, S.M. identified Wilkes as the individual who had sexually assaulted her. Respondent State of Minnesota charged Wilkes with one count of first-degree criminal sexual conduct (fear of great bodily harm) and one count of third-degree criminal sexual conduct (use of force or coercion). The complaint was later amended to add one count of first-degree criminal sexual conduct (use of a dangerous weapon) and one count of first-degree criminal sexual conduct (use of force or coercion with injury).

S.M.'s trial testimony was generally consistent with her initial account to police. The sexual-assault nurse and the police officer who interviewed S.M. also testified. Both indicated that S.M. was visibly upset during the examination and interview. Wilkes testified in his own defense, stating that on the night in question he met S.M. outside a bar in downtown Minneapolis. The two began talking and he informed her that he had some marijuana and asked if she wanted to smoke in a nearby parking area. S.M. eventually agreed to perform oral sex. Thereafter, S.M. invited him to her house, but he was unable to accompany her because his bus pass did not have sufficient funds.

The jury found appellant guilty on three of the charges: first-degree criminal sexual conduct (fear of great bodily harm), first-degree criminal sexual conduct (force or coercion with injury), and third-degree criminal sexual conduct (force or coercion). The district court imposed a presumptive sentence on the count of first-degree criminal sexual conduct (fear of great bodily harm). Wilkes appeals.

## D E C I S I O N

### I. The district court did not abuse its discretion by denying Wilkes's motion for a mistrial.

A mistrial should be granted only if there is a reasonable probability that the outcome of the trial would have been different had the incident resulting in the motion not occurred. *State v. Manthey*, 711 N.W.2d 498, 506 (Minn. 2006). We review the denial of a mistrial motion for abuse of discretion. *State v. Jorgensen*, 660 N.W.2d 127, 133 (Minn. 2003).

At trial, the prosecutor asked a police officer, "At some point for DNA purposes a buccal swab was taken from [Wilkes], right?" The officer answered, "No. A buccal swab was declined by [Wilkes]." Defense counsel objected. The district court sustained the objection and instructed the jury to disregard the question and answer. Wilkes argues the reference was so prejudicial as to deny him a fair trial. We are not persuaded.

"It is a violation of the defendant's right to due process for a prosecutor to comment on a defendant's failure to consent to a warrantless search." *State v. Jones*, 753 N.W.2d 677, 687 (Minn. 2008). Accordingly, it was improper for the prosecutor to elicit testimony regarding Wilkes's refusal to consent to a buccal swab. Because a constitutional evidentiary error occurred, Wilkes is entitled to a new trial unless the error was harmless beyond a reasonable doubt. *State v. Larson*, 788 N.W.2d 25, 32 (Minn. 2010). In determining whether such an error was harmless beyond a reasonable doubt, we consider the manner in which the evidence was presented, whether the evidence was highly persuasive, whether it was used in closing argument, whether the defendant was able to effectively counter it, and the strength of the evidence against the defendant. *Id.*

The reference to Wilkes's refusal to consent to a buccal swab was brief. The district court immediately sustained the objection and instructed the jury to disregard the question and answer. *See State v. Budreau*, 641 N.W.2d 919, 926 (Minn. 2002) (stating there is a presumption that the jury follows the district court's instructions). Wilkes's refusal to consent to a buccal swab was not mentioned again, and the prosecutor did not suggest that Wilkes's refusal was in any way indicative of his guilt. *See State v. Hill*, 801 N.W.2d 646, 656 (Minn. 2011) (determining a new trial was not required in part because

4

the state did not discuss the defendant's failure to consent to a DNA test during either opening or closing statements); *Larson*, 788 N.W.2d at 33 (concluding a new trial was not required when the prosecutor did not mention the defendant's test refusal during closing arguments or argue it was indicative of guilt). Indeed, Wilkes did not deny engaging in sexual contact with S.M.—he said it was consensual.

Finally, the case against Wilkes was strong. S.M.'s testimony was consistent with the accounts she initially gave to the sexual-assault nurse and police officer. The various injuries S.M. sustained are consistent with forcible, rather than consensual, sexual contact. And Wilkes agreed that S.M. did not have a reason to lie about what happened. The jury plainly credited S.M.'s version of events, and we defer to the jury's credibility findings. *See State v. Myers*, 359 N.W.2d 604, 609-10 (stating the credibility of witnesses is within the competence of the jury).

On this record, the prosecutor's brief reference to Wilkes's refusal to consent to a buccal swab was harmless beyond a reasonable doubt. Accordingly, the district court did not abuse its discretion by denying Wilkes's motion for a mistrial.

## II. The prosecutor did not commit prejudicial misconduct.

Wilkes argues that the prosecutor committed reversible misconduct by eliciting testimony regarding Wilkes's body odor from S.M., the sexual-assault nurse, and a police officer, and by commenting on this testimony during opening and closing arguments.

Because Wilkes did not object to the challenged testimony at trial, we consider whether there is "(1) error, (2) that is plain, and (3) affects substantial rights." *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). Error is plain if it "contravenes case law, a

5

rule, or a standard of conduct." *Id.* On the third element, the state bears the burden of proving that the misconduct did not affect the defendant's substantial rights. *Id.* When deciding whether the state has met this burden, we consider (1) the strength of the evidence against the defendant, (2) the pervasiveness of the misconduct, and (3) whether the defendant had the opportunity, or made efforts, to rebut the prosecutor's improper suggestions. *Hill*, 801 N.W.2d at 654-55. Even where misconduct occurs, we will reverse only when the defendant was denied a fair trial. *State v. Porter*, 526 N.W.2d 359, 365 (Minn. 1995).

Wilkes argues that the references to his body odor were plain error because a prosecutor may not highlight a defendant's socioeconomic status. *State v. Mayhorn*, 720 N.W.2d 776, 789 (Minn. 2006). He contends that testimony about his body odor is irrelevant and constitutes a thinly veiled character attack based on his socioeconomic status. We disagree because we are persuaded that the testimony is relevant to his consent defense.

Relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Minn. R. Evid. 401. Evidence regarding Wilkes's body odor meets the rule 401 standard. Wilkes's trial defense was premised on his contention that S.M. consented to performing oral sex. S.M.'s various statements and testimony that she was put off by Wilkes's strong body odor is highly probative on the issue of her alleged consent. She reported brushing her teeth to try to get rid of the smell, and spontaneously told the sexual-assault nurse that she felt like she

6

could still smell him. The police officer's testimony that he could smell Wilkes from 15-20 feet away corroborates S.M.'s assertion that his body odor was overwhelming. In short, evidence of Wilkes's notable body odor and S.M.'s strong negative reaction to it does not highlight his socioeconomic status; it is highly probative evidence refuting Wilkes's consent defense. *See State v. Moore*, 493 N.W.2d 606, 609 (Minn. App. 1992) (noting that the "complainant's knowledge of a scab or sore on [the defendant's] penis greatly diminishes the credibility of [the consent defense]"), *review denied* (Minn. Feb. 12, 1993).

Wilkes also points to two instances of objected-to misconduct that he argues warrant reversal. When an objection is made at trial, we first determine whether the prosecutor engaged in misconduct, and, if so, we apply a "two-tiered harmless-error analysis." *State v. Jackson*, 773 N.W.2d 111, 121 (Minn. 2009). If the misconduct is unusually serious, we decide whether it was harmless beyond a reasonable doubt. *Id.* If the misconduct is less serious, we consider whether it likely played a substantial part in influencing the jury's verdict. *Id.* The fact that an objection is sustained is not by itself evidence of prosecutorial misconduct. *State v. Steward*, 645 N.W.2d 115, 122 (Minn. 2002).

First, Wilkes objected when the prosecutor asked the forensic scientist to describe the smell of Wilkes's clothing items that she analyzed. The district court overruled the relevancy objection. As discussed above, evidence of Wilkes's body odor is relevant to whether the sexual contact was consensual. Accordingly, the prosecutor's question was not improper. Second, Wilkes objected when the prosecutor elicited testimony about his

7

refusal to consent to a buccal swab. It was improper for the prosecutor to elicit this testimony. But because we have already concluded that the error was harmless beyond a reasonable doubt, Wilkes is not entitled to reversal of his convictions on this basis.

Finally, Wilkes asserts various arguments in a pro se supplemental brief. We have carefully reviewed the arguments and conclude that they lack merit.

**Affirmed.**