*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0630**

State of Minnesota,
Respondent,

vs.

Edbin Jose Coreas,
Appellant.

**Filed May 20, 2024**
**Affirmed in part, reversed in part, and remanded**
**Johnson, Judge**

Mower County District Court
File No. 50-CR-19-1128

Keith Ellison, Attorney General, Peter Magnuson, Assistant Attorney General, St. Paul, Minnesota; and

Kristen Nelsen, Mower County Attorney, Austin, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Andrea Barts, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Cochran, Judge; and Kirk, Judge.[*]

---

[*]Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**JOHNSON**, Judge

A Mower County jury found Edbin Jose Coreas guilty of possession of a firearm by an ineligible person and possession of ammunition by an ineligible person. We conclude that the prosecutor did not engage in prosecutorial misconduct during closing argument. But we conclude that the district court erred by imposing multiple sentences based on the same behavioral incident. Therefore, we affirm in part, reverse in part, and remand for resentencing.

## FACTS

In the early morning hours of August 5, 2018, two police officers responded to a complaint about noise at a house in the city of Austin. Upon arriving at the house, the officers observed two men, Coreas and C.O., sitting side by side on the front steps. As the officers approached, Coreas "took off" toward one side of the house and disappeared from view. A few seconds later, the officers heard a loud noise from the area where Coreas had gone, which sounded like two metal objects striking each other. One officer pursued Coreas, who was found standing in thick vegetation near the side of the house. The officer asked Coreas about the noise, and Coreas responded, "I didn't throw no gun." The other officer observed a container of handgun ammunition on the front steps where the two men had been sitting. When the officer asked about it, Coreas told another person to grab it. A police dog found a handgun near the thick vegetation on the side of the house, retrieved it with his mouth, and brought it to an officer. To protect against an accidental discharge, the officer quickly took the handgun from the dog, without wearing gloves.

Approximately ten months later, in June 2019, the state charged Coreas with one count of possession of a firearm by an ineligible person and one count of possession of ammunition by an ineligible person, in violation of Minn. Stat. § 624.713, subd. 1(2) (2018). A jury found him guilty of the ammunition-possession charge in November 2020, but this court reversed the conviction and remanded for a new trial. *See State v. Coreas*, No. A21-0481, 2022 WL 1297605, at *1-6 (Minn. App. May 2, 2022).

The case was tried for a second time on three days in January 2023. Coreas stipulated that he is ineligible to possess either a firearm or ammunition. The state called seven witnesses in its case-in-chief, including two forensic scientists with the bureau of criminal apprehension. One forensic scientist testified that there were "no latent prints that were suitable for further examination" on the handgun. The other forensic scientist testified that the DNA sample taken from the handgun's slide "was a mixture of four or more individuals" and that the "[m]ajor male DNA profile does not match Edbin Coreas" but that, "due to insufficient genetic information, no statement can be made on the minor types." The second forensic scientist also testified that the DNA samples taken from the grip and the trigger of the handgun were "a mixture of five or more individuals and due to the complexity of the mixture, this DNA profile is not suitable for comparison."

The jury found Coreas guilty of both charges. The district court imposed concurrent sentences of 60 months of imprisonment. Coreas appeals.

3

## DECISION

## I. Claim of Prosecutorial Misconduct

Coreas argues that he is entitled to a new trial on the ground that the prosecutor engaged in misconduct during closing arguments.

The right to due process of law includes the right to a fair trial. *Spann v. State*, 704 N.W.2d 486, 493 (Minn. 2005); *State v. Ferguson*, 729 N.W.2d 604, 616 (Minn. App. 2007), *rev. denied* (Minn. June 19, 2007). "Prosecutors have an affirmative obligation to ensure that a defendant receives a fair trial." *State v. Jones*, 753 N.W.2d 677, 686 (Minn. 2008) (quotation omitted). Consequently, prosecutorial misconduct may result in the denial of the right to a fair trial. *State v. Ramey*, 721 N.W.2d 294, 300 (Minn. 2006).

The parties agree that Coreas did not object at trial to the alleged misconduct that he challenges on appeal. Accordingly, we apply the modified plain-error test. *State v. Carridine*, 812 N.W.2d 130, 146 (Minn. 2012). To prevail under the modified plain-error test, an appellant initially must establish that there is prosecutorial misconduct and that it is plain. *Ramey*, 721 N.W.2d at 302. If the appellant establishes plain misconduct, the burden shifts to the state to show that the plain misconduct did not affect the appellant's substantial rights, *i.e.*, "that there is no reasonable likelihood that the absence of the misconduct in question would have had a significant effect on the verdict of the jury." *Id.* (quotation omitted). "If these three prongs are satisfied, the court then assesses whether the error should be addressed to ensure fairness and the integrity of the judicial proceedings." *State v. Matthews*, 779 N.W.2d 543, 551 (Minn. 2010).

4

Coreas argues that the prosecutor engaged in misconduct in two ways. First, Coreas contends that the prosecutor engaged in misconduct by mischaracterizing the testimony of the forensic scientist concerning the state's DNA evidence. Specifically, Coreas contends that the prosecutor mischaracterized the evidence by stating on more than one occasion during closing argument that the DNA samples collected from the handgun "did not exclude Mr. Coreas." Coreas cites caselaw for the proposition that a prosecutor may not intentionally misstate the evidence or mislead the jury as to the inferences that may be drawn from the evidence. *See State v. Munt*, 831 N.W.2d 569, 587 (Minn. 2013); *State v. Bobo*, 770 N.W.2d 129, 142 (Minn. 2009).

A forensic scientist testified on direct examination that he "would never be able to put a source to who contributed" to the minor DNA profiles taken from the handgun. The prosecutor asked the forensic scientist if *anyone* could be excluded from the minor DNA profiles identified on the handgun. The forensic scientist responded by saying "we can't exclude or not exclude" and "there's nothing I can say about them." The prosecutor's statement in closing argument that the DNA samples collected from the handgun "did not exclude Mr. Coreas" is not a misstatement of the forensic scientist's testimony that *no one* could be excluded from having contributed to the minor DNA profiles left on the handgun. Accordingly, the prosecutor did not mischaracterize the testimony of the forensic scientist.

Coreas also contends that the prosecutor engaged in misconduct by misstating the state's burden of proof. Coreas contends that the prosecutor did so by stating that the jury "can't exclude" Coreas from the persons who have possessed the handgun or ammunition "based upon the lack of DNA or fingerprints" and by stating during rebuttal closing

5

argument that Coreas could not argue that his DNA was not present on the handgun. Coreas cites caselaw for the proposition that a prosecutor may not misstate the burden of proof and may not purport to shift the burden by implying that a defendant cannot prove his innocence. *State v. Martin*, 773 N.W.2d 89, 105 (Minn. 2009); *State v. Fields*, 730 N.W.2d 777, 786 (Minn. 2007); *State v. Hunt*, 615 N.W.2d 294, 302 (Minn. 2000).

In this case, the prosecutor correctly stated that "the burden is on the State of Minnesota . . . to prove each and every element beyond a reasonable doubt." In explaining the burden of proof, the prosecutor stated:

> Let's break down proof beyond a reasonable doubt. It begins that proof beyond a reasonable doubt is such proof as ordinarily prudent men and women would act upon in their most important affairs. It does not say proof beyond a reasonable doubt is eyewitness testimony. It does not say that proof beyond a reasonable doubt is direct evidence. It does not say the proof beyond a reasonable doubt must be something more than circumstantial evidence. In fact, just below that is an instruction that says, a fact may be proven by direct or circumstantial evidence, or both. The law does not prefer one form of evidence over the other.
>
> It also does not say that proof beyond a reasonable doubt requires conclusive forensic evidence. If that were true, what would we have done for justice in the days before DNA testing? Or even further back before fingerprint testing?

The prosecutor then described the inconclusive nature of the state's forensic evidence, saying that the "insufficient forensic does not exclude Mr. Coreas." The prosecutor's statements are consistent with the law inasmuch as forensic evidence is not required. The prosecutor did not misstate the state's burden of proof.

Thus, the prosecutor did not engage in misconduct—let alone plain misconduct—in closing arguments.

## II. Multiple Sentences

Coreas also argues that the district court erred by imposing two sentences, one for each offense, on the ground that the two offenses arise from a single behavioral incident.

With certain exceptions that are not relevant to this case, "if a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses." Minn. Stat. § 609.035, subd. 1 (2018). Consequently, "multiple sentences for multiple offenses committed as part of the same behavioral incident are prohibited." *State v. Barthman*, 938 N.W.2d 257, 265 (Minn. 2020). "To determine whether two or more offenses were committed during a single behavioral incident, we examine two factors: (1) whether the offenses occurred at substantially the same time and place, and (2) whether the conduct was motivated by an effort to obtain a single criminal objective." *Id.* (quotations omitted). The state bears the burden of proving, by a preponderance of the evidence, that multiple offenses did *not* arise from a single behavioral incident. *Id.* at 266.

In its responsive brief, the state concedes that the two offenses arise from a single behavioral incident and that this court should reverse the imposition of multiple sentences and remand to the district court with instructions to vacate the sentence on the first count. We accept the state's concession. On remand, the district court shall resentence Coreas by

7

vacating the sentence (but not the adjudication of guilt) on count 1 and imposing a sentence only on count 2.

**Affirmed in part, reversed in part, and remanded.**